NITE KRAFT CORPORATION, A CORPORATION OF NEW JERSEY, LICENSED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF-APPELLEE, v. UNITED STATES TRUCKING CORPORATION, A NEW YORK CORPORATION, LICENSED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.

Submitted October 13, 1933—Decided February 5, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the plaintiff-appellee, *Braelow & Tepper.*

For the defendant-appellant, *Norman R. Wynne.*

The opinion of the court was delivered by

PERSKIE, J.   This appeal brings up for review a judgment of $500 rendered on August 3d, 1933, by the judge, sitting without a jury, in favor of the plaintiff and against the defendant.   The case was tried on June 16th, 1932.   In the language of the appellant it appeals to this court to set aside the verdict because of alleged errors of the trial court in failing to grant defendant's motions for a nonsuit and direction of verdict, for finding in favor of plaintiff on the evidence, and for applying an erroneous rule as to damages.

Briefly, the facts are as follows:   The plaintiff and defendant entered into a contract on March 7th, 1930, which contract, plus rider No. 2 thereto, was in force at the time the alleged cause of action arose.   This contract provided, *inter alia:*

"First:   The Express Company shall receive and receipt for sealed package of money the value of which shall be marked on the package and shall transport and deliver the same in like condition, with reasonable despatch as follows:

"Call every Saturday about 9:30 A. M. at the Orange Valley Bank, 394 Scotland Road, Orange, N. J., receive sealed package of money (payroll) and deliver same by not later than 11:00 A. M. to the customer at 451 South Jefferson Street, Orange, New Jersey.

"Call every Thursday about 12:30 P. M. at the First National Bank, Main Street, Woodbridge, N. J., receive two sealed packages of money (payrolls) and promptly deliver one to the customer's shop at 35 Green Street, Woodbridge, N. J., and one to customer's shop at 79 Avenel St., Avenel, N. J.

"In the event of Saturday or Thursday falling on a bank holiday, service is to be performed on the preceding day, or such other day as may be designated by the customer."

"Second: The Express Company shall assume full responsibility for the loss of any or all of said money contained in the sealed package above described from the time when the same is delivered into its custody until it is delivered to and receipted for by the customer or the person designated by him to give such receipt at the address named; or, in the event that such delivery cannot be made for reasons beyond the control of the Express Company, shall deliver the same back to the customer from which it received it or to the party designated by the customer.

"Third: The Express Company represents that it maintains an insurance policy covering direct loss by robbery on the premises of the customer immediately following the delivery thereto of payroll moneys referred to in this contract and occurring only during a period of forty-eight (48) hours after such delivery and while in the custody of said customer, in accordance with the terms and conditions and for the period provided in rider 1 hereto attached. The carrier agrees that after the occurrence of a loss within the terms of said policy and due to a peril therein insured against, and provided the customer shall have complied with all the terms of said rider and shall have made due proof of loss thereunder, the Express Company will pay to such customer a sum of money equivalent to the sum which the Express Company shall have received from the insurer on account of said loss."

Rider No. 1 was superseded by rider No. 2. The rider to the contract also provided:

"C. The custodian warrants that there will be at least one custodian and not less than one guard in charge of the property at all times."

The term custodian is defined to be:

"Custodian, within the meaning of this rider, is limited to either the customer or a person in the customer's employ not less than seventeen years of age and not over seventy years of age, and authorized by the customer to have in his actual care and custody the property covered under this rider."

The state of demand was made up of two counts. The plaintiff has determined to base its claim for affirmance of the judgment on the second count. Apparently plaintiff's stand is due to the fact that defendant did not and could not collect from its insurer by reason of plaintiff's failure to carry out the terms of the contract, plus the rider, in so far as it affected the insurance company. The gravamen of the second count is that the defendant, by delivering the payroll on Saturday, at eight-twenty A. M. instead of Thursday, at approximately twelve-thirty P. M., breached its undertaking, resulting in damage, namely, the robbery of the payroll amounting to $667.51, for which this suit was instituted. The plaintiff waived the excess above $500. The proof discloses that during the continuance of the contractual relationship between the parties the First National Bank of Woodbridge failed and thereafter the payroll was made up at the Chase National Bank, New York. The practice or procedure for the delivery of the payroll after the closing of the bank at Woodbridge is best illustrated in the answer given by Mr. Klem to the court: "Q. What time did you generally deliver this particular payroll? Was it always delivered at that hour? A. Well, if your honor please, it was delivered at a different hour when it came from a different bank, but when the Woodbridge bank closed Mr. Olesky gave me no definite instructions as to when he wanted the weekly payroll delivered because there was a question as to what time he could have the figures ready at the bank; so, consequently it was necessary to make two or three telephone calls each week to make sure when the figures would be ready and then we would make the arrangements over the telephone as to what time we could deliver the money. We always did it with his consent—as to the approximate time of delivery—that is, within a half hour." The court: "That is all."

Mr. Klem further testified that he told Mr. Olesky, of plaintiff company, that defendant could not deliver the money on a Thursday by reason of the closing of the bank and that it could not get in from the Chase National Bank until Thursday, and that it delivered it in pursuance to definite arrange-

ments, as above set forth. It also appears that a prior delivery of a payroll was made and accepted on a day other than Thursday, to wit: a Saturday, *i. e.*, the Saturday before the Saturday of the robbery, at or about the same hour that the delivery was made and accepted on the day of the robbery. It was also testified that plaintiff consented to this arrangement although it was denied for the plaintiff. It also appears that defendant obtained the payroll in question from the Chase National Bank on a Thursday, kept it in a vault at Newark, until it was delivered on Saturday morning, December 19th, 1931, at about eight-twenty A. M., and immediately thereafter plaintiff's manager was held up in the offices of the plaintiff and robbed thereof.

As already indicated after holding the matter under advisement since June 16th, 1932, the judge found for the plaintiff. He filed a memorandum in which he held:

"After considering the evidence presented by both plaintiff and defendant, the court comes to the conclusion that plaintiff has borne the burden of proof and has established its case by a preponderance of the testimony."

We are not concerned with the reasoning of the court below, on this appeal, but rather with the question whether the court reached a right result. *McCarthy* v. *West Hoboken, 93 N. J. L.* 247.

It is conceded that the payroll was delivered by the defendant to the plaintiff on a Saturday. The reason for the change of this day is clear and convincing. The closing of the bank at Woodbridge necessitated other arrangements. The testimony as to change of arrangements is not in accord. Mr. Klem testified for the appellant as heretofore quoted. Lee Olesky in rebuttal for the appellee, testified as follows: "*Q.* Did he ever tell you that it was to be delivered in the early part of the morning? *A.* No. *Q.* Did you ever consent to such an arrangement? *A.* No; we didn't arrange it." Upon the cross-examination of this witness the following testimony was adduced: "*Q.* From the time the Woodbridge bank closed, it was impossible to get the money in Woodbridge of course, wasn't it, and new arrangements were made? *A.* Well, it

was made new arrangements, yes. *Q.* And you weren't the man who signed the checks and arranged with the Chase National Bank for the delivery of the money, were you? *A.* No. *Q.* But before they could get the money arrangements had to be made with the Chase National Bank in New York to pay it out from your payroll check, isn't that so? *A.* Yes." Mr. Wynne: "That is all." By the court: *"Q.* Who made those arrangements? *A.* Well, Mr. Sam Olesky."

Under such conflicting testimony it was open to the trial judge to find as a fact that defendants either did or did not breach the contract. Clearly, his entering judgment in favor of the plaintiff indicates that he found that the defendant did breach the contract. On conflicting evidence the appellate court will assume a finding of fact that will support the judgment below. *Steinmeyer* v. *Phenix Cheese Co.,* 91 *N. J. L.* 351; *Backes* v. *Movsovich,* 82 *Id.* 44; *McBride* v. *Rogers,* 83 *Id.* 407.

Having determined that under the conflicting testimony it was open to the court to find as it did, appellant further urges that the damages claimed (and represented by the judgment) are not those naturally arising from the breach of the contract or such as might reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract.

We think that the question in the instant case is one of relationship of cause and effect in the wrong done (breach of contract) and injury sustained (loss of payroll by robbery).

In the case of *Warwick* v. *Hutchinson,* 45 *N. J. L.* 61, Mr. Justice Depue (at *p.* 65) held:

"It is a fundamental principle of law, applicable alike to breaches of contract of this description and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act. The wrong done and the injury sustained must bear to each other the relation of cause and effect; and the damages, whether they arise

from withholding a legal right or the breach of a legal duty, to be recoverable, must be the natural and proximate consequence of the act complained of. 2 *Greenl. Ev.*, §§ 254, 256; *Sedg. Dam.* 31; *Stevenson* v. *Newnham*, 13 *C. B.* 285; *Burlon* v. *Pinkerton (L. R.)*, 2 *Exch.* 340; *Glover* v. *L. & S. W. R. R. Co. (L. R.)*, 3 *Q. B.* 25; *Byard* v. *Holmes*, 5 *Vr.* 296; *Cuff* v. *N. & N. Y. R. R. Co.*, 6 *Id.* 17; *Kuhn* v. *Jewett*, 5 *Stew. Eq.* 647."

See, also, *Bonhard* v. *Gindin*, 104 *N. J. L.* 599.

We find no such relationship of cause and effect in the breach of contract or wrong done and injury or damage sustained. If the relationship aforesaid existed, the damages sustained could be nothing other than the amount of the robbed payroll. But we can find no evidence to support the conclusion that the robbery resulted because the payroll was delivered about eight-twenty A. M. instead of twelve-thirty P. M. As a general rule, robberies are planned. It is argued strongly, and we think effectively, that by the change of the usual hour of delivery, it would tend, if anything, to thwart those intending to commit robbery. As appears above, the defendant safely delivered the money to plaintiff but at a time different from that stipulated in the contract, which had become impossible. We see no *causal* relation to support an award of damages for that variance.

Judgment is reversed, with costs.